## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TEKSYSTEMS, INC.,                *

    Plaintiff,                *

      v.                *      **CIVIL NO. RDB 05-1532**

DEREK SPOTSWOOD,                *

    Defendant.                *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

This Memorandum Opinion is rendered pursuant to the Court's Order of June 21, 2005, following the hearing on the Plaintiff's Motion for Preliminary Injunction.   The Order reflects that the Court granted in part and denied in part Plaintiff's Motion for the reasons set forth herein.  This action was brought by Plaintiff Teksystems, Inc. ("Teksystems") against its former employee, Defendant Derek Spotswood to, *inter alia,* enforce various provisions of Spotswood's employment contract. Plaintiff contends that Spotswood violated his employment agreement with the company by taking confidential and proprietary information from Teksystems, and by contacting Teksystems' clients to solicit business for his new employer, Eventus Group, Inc. ("Eventus"), which is a competitor of Teksystems.  Now before the Court is Plaintiff's Motion for a Preliminary Injunction to enjoin Defendant from having any contact with various Teksystems' clients and to enjoin him from using any confidential and proprietary information he may have improperly appropriated from Teksystems.

On June 8, 2005, after a brief telephonic hearing, the Court granted Plaintiff's Motion for a Temporary Restraining Order enforcing the non-compete and confidentiality provisions of the

employment agreement. The Court also granted Plaintiff's Motion for limited expedited discovery in the

case.  On June 16, 2005, the Court conducted a lengthy hearing on Plaintiff's instant Motion for

Preliminary Injunction.  Based upon the testimony and the arguments of counsel, the Court requested

further information from the parties and extended the Temporary Restraining Order to June 21, 2005.

Specifically, the Court ordered the parties to confer and to submit to the Court a complete list of all of

the Teksystems clients in both Florida, where Spotswood worked, and California, where he now

works, with which Spotswood may have had contact or about which he may have obtained confidential

information.  The parties have submitted competing lists in response to the Court's directive, and the

Plaintiff's Motion for Preliminary Injunction is therefore ripe for consideration.  For the reasons that

follow, Plaintiff's Motion for a Preliminary Injunction is GRANTED in part and DENIED in part.

## I.    Background

Teksystems is in the business of recruiting, employing, and providing the services of technical

personnel, industrial personnel, and office personnel, including but not limited to engineers, designers,

drafters, computer programmers, and systems analysts on a temporary and permanent basis,

throughout the United States  Teksystems is currently a wholly-owned subsidiary of Allegis Group, Inc.

("Allegis").[1]

---

[1]Allegis was formerly known as Affiliated Services, Inc., which was formerly known as
Aerotek, Inc.  Until 1997, Teksystems was a division of Aerotek.  After 1997, Teksystems
incorporated and became a wholly-owned subsidiary of Aerotek.  Defendant filed a Motion to Dismiss
the claim contending that there is no privity of contract between Teksystems and Spotswood because
Spotswood signed the Agreement with Aerotek and not with Teksystems.  Defendant's assertion is
based on the fact that, in general, contracts for personal services may not be assigned under Maryland
law, unless both parties consent.  *See, e.g., The Macke Co. v. Pizza of Gaithersburg, Inc.,* 259 Md.
479, 482 (1970).  However, the general bar of assignment does not apply in this case because, save

On November 11, 1996, Teksystems hired Spotswood as a technical recruiter.  On that same day, Spotswood signed the Employment Agreement ("Agreement") (Pl.'s Comp. Ex. A).  The Agreement contained the following clauses of relevance here:

> **3.**    <u>**Covenant Not to Compete**</u>: Employee agrees that upon the termination of his/her employment, whether by AEROTEK or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter EMPLOYEE shall not:
>
> (1)    Engage in the business of recruiting or providing on a temporary or permanent basis technical service personnel . . . industrial personnel . . . or office support personnel within a radius of fifty (50) miles of the office in which EMPLOYEE worked at the time his/her employment terminated, or any other office in which EMPLOYEE worked during the two (2) years preceding termination of employment, or as much thereof as a court of competent jurisdiction deems reasonable;
>
> (2)    Approach, contact, solicit, divert or accept technical service personnel, industrial personnel or office support personnel to provide services on a temporary or permanent basis to any individual, corporation, or other entity which, at any time within two (2) years prior to the date of termination of the EMPLOYEE'S employment, was a client or customer of AEROTEK, or diverting or inducing such personnel to cease working for AEROTEK, or its clients or customers;
>
> (3)    Approach, contact or solicit any individual, corporation or other entity which, at any time within the two (2) years prior to the date of termination of EMPLOYEE'S employment, was a client or customer of AEROTEK . . .
>
> The prohibitions contained in (1), (2), (3) and (4) above shall extend to activities undertaken by EMPLOYEE directly on his/her own behalf and activities undertaken by EMPLOYEE indirectly though any entity which undertakes such prohibited activities and

---

for a change in the corporate form of Defendant's employer, nothing about Spotswood's position changed.  In addition, the record suggests that, after Teksystems was separately incorporated as an Aerotek subsidiary, Spotswood continued to work for Teksystems under precisely the same terms for several years.  At no time did Plaintiff make any effort to repudiate his contract, nor was the contract terminated, and Plaintiff continued to claim the benefits of the employment contract.  It is axiomatic under Maryland law that a "party, having thus recognized a contract as existing and having done something to carry it into effect and to obtain or claim its benefits, although perhaps only to a partial extent, and having thus taken his chances, cannot afterwards be suffered to repudiate the transaction and allege its voidable nature." *Hagan v. Dundore*, 187 Md. 430, 441, 50 A.2d 570, 76 (Md.1947).  Accordingly, the Court denied Defendant's Motion to Dismiss at the June 16, 2005 hearing.

in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

5.     **Covenant Not to Divulge Confidential Information:** EMPLOYEE covenants and agrees that, except as required by the proper performance of his/her duties for AEROTEK, he/she shall not use, disclose or divulge any Confidential Information or Trade Secrets concerning personnel, industrial personnel or office support personnel . . . to any other person, entity, or company besides AEROTEK. For purposes of this Agreement, "Confidential Information" shall mean information not generally known by AEROTEK'S competitors or the general public concerning AEROTEK, including but not limited to: its financial affairs, sales and marketing strategy, acquisition plan, pricing and costs; its customer's names, addresses, telephone numbers, contact persons, staffing requirements, margin tolerances regarding pricing, and the names, addresses, telephone numbers, skill sets, availability and wage rates of its technical personnel, industrial personnel or office support personnel. "Trade Secrets" shall mean information that AEROTEK takes measures to keep secret and that gives AEROTEK an advantage over its competitors, and includes but is not limited to: sales, recruiting, pricing and marketing techniques, sales and recruiting manuals, forms for acquiring and recording information, financial controls, and management practices, procedures and processes.

(Pl.'s Compl. Ex. A.) The Agreement also provides that all disputes are to be governed by Maryland law. (*Id.* at ¶ 9.)

During his employment with Teksystems, Spotswood had access to proprietary and confidential information concerning Teksystem's clients, and Spotswood developed good will and relationships with those clients under Teksystem's employ. Spotswood was eventually promoted to the position of business development manager in Teksystems' Miami office, where  Spotswood was one of Teksystem's top producing sales representatives.

On January 17, 2005, Spotswood voluntarily resigned from Teksystems. Soon after he left Teksystems, Spotswood was hired by Eventus, a Florida-based corporation engaged in a similar business to Teksystems. The principal behind Eventus, Cesar Jimenez, is a former Teksystem's

employee with whom Spotswood worked at Teksystems.

Plaintiff alleges that, prior to his resignation, Spotswood: (1) created a detailed 250 page listing of Teksystem clients, including contact information, which he later deleted; (2) deleted 146 documents containing client information from his Teksystem's computer;(3) deleted his computer address book; (4) obtained copies of the Annual Operating Plans ("AOP's") prepared by accountants in the Miami office which contained detailed information about Teksystems' clients and various information about the client's staffing needs and future plans; and (5) that,

on December 28, 2004 (one month before he left Teksystems), Spotswood arranged and participated in a meeting between himself, two Eventus system employees and Teksystems' client, Interval, with the purpose of convincing Interval to divert its business to Eventus group.  (Vivian More Aff. ¶¶ 4-7.)

According to Plaintiff, Spotswood engaged in similar behavior after he left Teksystems. For instance, on February 28, 2005, Spotswood sent an email to Teksystems' client contacts at the University of Miami soliciting their business on behalf of Eventus.  (Pl.'s Compl. Ex. D (email exchanges)).  Plaintiff further alleges that, on April 22, 2005, Spotswood visited the Miami offices of the largest Teksystems' client, Baptist Health South, for the purpose of soliciting business for Eventus. Finally, Plaintiff adduced evidence at the June 16, 2005, hearing that Spotswood initiated contact with a former Teksystems client after this Court had issued the June 8, 2005, Temporary Restraining Order barring any such contact.

Plaintiff filed suit in this Court on June 8, 2005.  Plaintiff's Complaint sets forth the following counts: Count One, breach of contract; Count Two, breach of duty of loyalty; Count Three, breach of confidentiality; Count Four, tortious interference with contractual relations; and Count Five,

misappropriation of trade secrets.  On the same day, Plaintiff filed the instant Motion for a Preliminary

Injunction to enforce the non-compete and non-disclosure clauses of the Agreement.  Pursuant to the

Court's June 8, 2005, Order, the parties have conducted limited discovery and both parties have

submitted numerous supplemental materials in support of the respective positions.

## II.   <u>Applicable Legal Standards</u>

Under Rule 65 of the Federal Rules of Civil Procedure, the determination of whether to issue a

preliminary injunction is committed to the sound discretion of the district court.  *Hughes Network Sys.*

*v. InterDigital Communications Corp.*, 17 F.3d 691, 693 (4th Cir. 1994); *Backus v. Spears,* 677

F.2d 397, 398-99 (4th Cir. 1982).  The decision of a district court to grant or deny preliminary

injunctive relief will be reversed on appeal only for a clear abuse of discretion.  *Manning v. Hunt*, 119

F.3d 254, 263 (4th Cir. 1997).   However, the grant of a  preliminary injunction is an "extraordinary

remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited

circumstances which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d

802, 811 (4th Cir. 1992) (internal quotation and citation omitted); *accord Manning v. Hunt*, 119 F.3d

254, 263 (4th Cir. 1997).

To determine whether a preliminary injunction is appropriate, the court must consider four

factors established by the Fourth Circuit in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig*

*Mfg. Co., Inc.,* 550 F.2d 189 (4th Cir. 1977).  These four factors are: 1) the likelihood of irreparable

harm to the plaintiff if the injunctive relief is denied; 2) the likelihood of harm to the defendant if the

requested relief is granted; 3) the likelihood that the plaintiff will succeed on the merits of the action, and

4) the public interest.  *Id.*

The Fourth Circuit has established what is known as the hardship balancing test which emphasizes the first two factors of the *Blackwelder* analysis. *See Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997) (citing *Direx*, 952 F.2d at 812). To conduct the hardship balancing test, the district court must weigh the first two factors regarding the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied and the harm to the defendant if granted. *See id*. The harm demonstrated by the plaintiff must be neither remote nor speculative, but actual and imminent. *See id.* Furthermore, harm is not "irreparable" if it can be compensated by money damages during the normal course of litigation. *See Hughes Network Sys.,* 17 F.3d at 694.

After the district court has completed the hardship balancing test, the court must determine the degree to which the plaintiff must demonstrate a likelihood of success on the merits. *Manning*, 119 F.3d at 263. There is a "sliding scale that demands less of a showing of likelihood of success on the merits when the balance of hardships weighs strongly in favor of the plaintiff, and vice versa." *Sun Microsystems, Inc. v. Microsoft Corp.*, 333 F.3d 517, 526 (4th Cir. 2003); *see also Direx*, 952 F.2d at 812-13 (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991)). Lastly, the district court must consider whether a preliminary injunction would be in the public interest.

If a court determines that a preliminary injunction is warranted under the *Blackwelder* analysis, Rule 65(c) provides that the court must require the plaintiff to post a security bond prior to the imposition of the relief. Specifically, Rule 65(c) provides that "[n]o . . . preliminary injunction shall issue except upon the giving of security by the applicant in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." *See also District 17, United Mine Workers of America v. A&M*

*Trucking, Inc.*, 991 F.2d 108, 109 (4th Cir. 1993) (failure to comply with rule is reversible error);

*Maryland Dep't of Human Resources v. United States Dep't of Agric.*, 976 F.2d 1462, 1483 &

n.21 (4th Cir. 1992) ("failure to require a bond before granting preliminary injunctive relief is reversible

error").

## III.   Analysis

As discussed below, Plaintiff has satisfied its burden under *Blackwelder* with respect to its

request for an injunction enjoining Defendant from competing within fifty-miles of the Teksystems' Miami

office and enjoining Defendant from using confidential and proprietary information and trade secrets.

However, Plaintiff has failed to establish that it is entitled to an injunction barring Defendant from

soliciting all of Teksystems' clients.  The Court first analyzes Plaintiff's claims under the four

*Blackwelder* factors, and concludes with a discussion as to the security bond which Plaintiff is required

to post.

### A.   Showing of Irreparable Harm to Plaintiff

To satisfy the first factor under *Blackwelder,* the Court must find that the Plaintiff has made a

"clear showing" that it will suffer irreparable harm if the Court denies its request for injunctive relief.

*Direx Israel, Ltd.*, 952 F.2d at 812.  Plaintiff has met its burden.  The record before the Court

demonstrates that Defendant Spotswood had access to key contacts with Teksystems clients and that he

had virtually unlimited access to valuable confidential and proprietary information with respect to those

clients.  Furthermore, the record suggests that Spotswood has used his contacts and the confidential and

proprietary information to solicit business on behalf of his new employer, to the competitive disadvantage

of Teksystems.  Courts have recognized that an employee's action in competing with a former employer

8

in violation of covenants not to compete demonstrates irreparable harm. *See, e.g., Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 638-39 (D. Md. 1998).  In addition, Courts have recognized that the potential for the loss of trade secrets, which Plaintiff has clearly established here, demonstrates irreparable harm because "[a] trade secret once lost is, of course, lost forever."  *FMC Corp v. Taiwan Tainan Giant Insdus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984) (per curium).  Accordingly, Plaintiff has established that Spotswood's continuing activities constitute an actual and imminent threat of irreparable harm to its business that would not be adequately addressed by an award of money damages.

**B.**     **Showing of Harm to Defendant**

The next step under the *Blackwelder* analysis is for the court to "balance the likelihood of irreparable harm to the [moving party] against the likelihood of harm to the [non-moving party]." *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *Blackwelder*, 550 F.2d at 195).  Defendant Spotswood testified that he relocated to California, and that he is seeking to change the focus of his sales career to areas that are not emphasized by Teksystems.  Consequently, he acknowledges that he would suffer no significant harm if he were to be barred from contacting Teksystems clients with which he had contact while at Teksystems.  Additionally, Spotswood has essentially acknowledged that he should be enjoined from using any confidential or proprietary information which he obtained from Teksystems.  However, Spotswood submits that he would suffer undue hardship if he were to be barred from contacting Teksystems clients in California because, he contends, he had no contact with any of those clients while working as a Miami-based sales associate for the company.  The Court will address Defendant's arguments with respect to the non-solicitation of all of Teksystems' clients in the next section.  Nonetheless, it is clear that the balance strongly favors the

Plaintiff with regard to enjoining Defendant from contacting his former clients, and with respect to the

Defendant's use of Teksystems' confidential and proprietary information.

### C.    Likelihood of Success on the Merits

Because the balance of hardships "tips decidedly in favor of the [moving party]," *Rum Creek*

*Coal Sales*, 926 F.2d at 359, then "a preliminary injunction will be granted if the [moving party] has

raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair

ground for litigation and thus more deliberate investigation." *Direx Israel, Ltd. v. Breakthrough Med.*

*Corp.*, 952 F.2d 802, 813 (4th Cir. 1992).  As a preliminary matter, both parties concede that, as a

result of the choice-of-law provisions in the Agreement, Maryland law governs the merits of the dispute.

Under Maryland law, it is clear that Plaintiff has demonstrated its likelihood of success on its claims

relating to Defendant's use of confidential and proprietary information and trade secrets.[2]  Moreover,

there is no real dispute as to the enforceability of the clause barring Defendant from competing with

Teksystems within a fifty-mile radius of the Miami office where he worked.[3]  What is at issue, however,

is the enforceablitity of the Agreement's prohibition barring Defendant from having any contact with any

---

[2]  Maryland courts generally apply the following six factors in determining the existence of a trade secret: (i) the extent to which the information is known outside of his [the employer's] business; (ii) the extent to which it is known by employees and others involved in his business; (iii) the extent of measures taken by him to guard the secrecy of the information; (iv) the value of the information to him and to his competitors; (v) the amount of effort or money expended by him in developing the information; and (vi) the ease or difficulty with which the information could be properly acquired or duplicated by others.  *Id.* at 371."  *Home Paramount Pest Control Companies, Inc. v. FMC Corporation/Agricultural Products Group*, 107 F. Supp. 2d 684, 692 (D. Md. 2000).  Based upon the record before the Court, Plaintiff has established that Spotswood had access to information that would qualify under this standard as trade secrets.

[3]The fifty-mile radius is a reasonable restriction under the Maryland-law standards.  *See, e.g. Becker v. Bailey,* 268 Md. 93, 96, 299 A.2d 835, 838 (Md. 1973).

of Teksystems' clients.  Defendant argues that this complete ban is over-broad, and therefore

unenforceable.  Based upon that assertion, Defendant contends that Plaintiff cannot demonstrate a

likelihood of success on the merits with respect to that clause and should not be granted injunctive relief

thereon.

Generally, under Maryland law, a restrictive covenant will be enforced if "the restraint is

confined within limits which are no wider as to area and duration than are reasonably necessary for the

protection of the business of the employer and do not impose undue hardship on the employee or

disregard the interests of the public.' *Becker v. Bailey,* 268 Md. 93, 96, 299 A.2d 835, 838 (Md.

1973).  Maryland law also provides that "[a] covenant not to compete is enforceable if its duration and

geographic area are only so broad as is reasonably necessary to protect the employer's business, and if

the covenant does not impose undue hardships on the employee or the public." *Intelus Corp. v. Barton,*

7 F. Supp. 2d 635, 641 (D. Md. 1998) (Williams, J.) (citing *Holloway v. Faw, Casson & Co.,* 319

Md. 324, 335, 572 A.2d 510, 515 (Md.1990) quoting *Ruhl v. F. A. Bartlett Tree Expert Co.*, 225

A.2d 288, 291 (Md. 1967)).

Applying these principles, Judge Motz of this Court held a restrictive covenant unenforceable because he

recognized that the "blanket" prohibition barring the plaintiff from soliciting any of the plaintiff corporation's

clients was over-broad under Maryland law. *Deutsche Post Global Mail, Ltd. v. Conrad,* 292 F. Supp.

2d 748, 755 (D. Md. 2003).  In so ruling, Judge Motz noted that "Maryland courts have recently expressed

concerns about the imposition of such blanket restrictions on client solicitation." *Id.* (citing *PADCO*

*Advisors, Inc. v. Omdahl,* 179 F.Supp.2d 600, 608 (D. Md. 2002) ("Maryland has looked with disfavor

on agreements which restrict former employees from dealing with all former clients.") citing in turn *Holloway*

11

*v. Faw, Casson & Co.,* 78 Md. App. 205, 225, 552 A.2d 1311, 1321 (1989), *rev'd in part on other grounds,* 319 Md. 324, 572 A.2d 510 (1990)).  More precisely, Judge Motz referenced the opinion of the Maryland Court of Special Appeals in  *Holloway,* 78 Md. App. 205, 552 A.2d 1311.  In that case, the court invalidated a non-solicitation clause restricting solicitation of all clients where "the former employer had six offices in Maryland and Delaware, the employee, who had only worked in one location, would likely not be able to profit from the personal relationships he had forged to solicit clients of the other offices with whom he had no contact." *Conrad,* 292 F. Supp. 2d 748, 755 (citing *Holloway,* 78 Md. App. at 222, 552 A.2d at 1319).  Based on the limited record before the Court and the limited briefing which has been conducted, it appears that court's reasoning in *Holloway* renders the "blanket prohibition" against Spotswood having contact with any of Teksystems' clients unenforceable.  By its own admission, Teksystems is the largest IT staffing firm in the nation.  Teksystems' customer base is therefore quite large.  In addition, like the employee in *Holloway,* the record suggests that Spotswood's sales activities were limited almost exclusively to Miami, Florida.  Consequently, much like the plaintiff in *Holloway,* Plaintiff "would likely not be able to profit from the personal relationships he had forged to solicit clients" on behalf of his new employer.  *Holloway,* 78 Md. App. at 222, 552 A.2d at 1319.  Thus,  the  portion of the non-compete clause barring contact with all of Teksystems' customers goes beyond what is reasonably necessary to protect Teksystems' business, and Plaintiff has failed to demonstrate its likelihood of success as to the enforcement of that clause.

Despite the over-breadth of the non-compete clause, Plaintiff argues that the Court should enjoin Spotswood from contacting any of its clients because there is evidence that Spotswood removed confidential information relating to an unspecified number of clients, and that there is simply no way to determine whether Spotswood will attempt to use that information against Teksystems.  In response to that argument, at the

June 16, 2005 hearing, the Court directed the parties to confer on a list of clients based in Florida and California about which Spotswood might have obtained confidential information, or with which he may have had personal contact while employed at Teksystems.  Plaintiff produced a list of 744 customers, 441 of which are located in California.  For his part, Defendant reviewed the list and compiled a list of the companies with which he recalls having some contact or about which he concedes he had some information. While Plaintiff insists that there is a risk that Spotswood has confidential information or prior relationships with all 744 of the companies listed in its submission, there is simply nothing on this record to support that contention.  Standing alone, the fact that Spotswood may have removed information from the Teksystems' Miami office does not justify enjoining him from soliciting business with 441 California Teksystems clients with which he had no contact.

Nonetheless, Defendant Spotswood should make no mistake--the preliminary injunction issued in connection with this Opinion plainly bars him from capitalizing on any information which he gleaned while employed at Teksystems.  This includes, *inter alia,* using any information gained from Teksystems to solicit clients for his new employer.  This also includes divulging information to others for that same purpose. Defendant Spotswood must realize that any such actions would clearly violate this Court's Order.

In sum, the Plaintiff has demonstrated a likelihood of success with respect to the non-compete clause barring Defendant from conducting any business within a fifty mile radius of the Miami office of Teksystems where Spotswood worked and regarding the appropriation of confidential and proprietary information and trade secrets.  However, Plaintiff's attempts to bar Spotswood from having contact with all, or alternatively with 744 of its clients, goes beyond what "is reasonably necessary to protect the employer's business" and "imposes undue hardships on the employee" and thus likely unenforceable under Maryland law. *See Intelus*

13

*Corp.,* 7 F. Supp. 2d at 641.  In accordance with established Maryland law, this Court will enjoin

Spotswood from conducting any business within a fifty mile radius of Teksystems' Miami office, from having

any contact with the companies listed in his submissions to the court, and the Court will enjoin him from

capitalizing, in any way, on confidential or proprietary information which he may have gained during the

course of his employment with Teksystems.

      **D.**    **Public Interest**

      The final *Blackwelder* factor requires courts to consider the public interest in determining whether

to issue a preliminary injunction.  In *Intelus,* Judge Williams of this Court recognized that, under Maryland

law, the public has an interest in the enforcement of reasonable restrictive covenants "[a]s long as employers

do not restrict employees from earning a living and do not limit fair competition, they must be given the

opportunity to provide a service to their customers without risking a substantial loss of business and good

will every time and employee decides to switch employment."  7 F. Supp. 2d at 642.  Based upon the

foregoing discussion, the Court is satisfied that the Order entered on June 21, 2005 in connection with this

Opinion, granting in part and denying in part Plaintiff's Motion, is in the public interest.

      **E.**    **Security**

      As previously noted, Rule 65(c) provides that "[n]o . . . preliminary injunction shall issue except

upon the giving of security by the applicant in such sum as the court deems proper, for the payment of such

costs and damages as may be incurred or suffered by any party who is found to have been wrongfully

enjoined or restrained."  At the June 16, 2005, hearing, Defendant testified that he earned approximately

$200,000 per year while employed at Teksystems.  Based upon his testimony and the arguments of counsel,

the Court has determined that the Defendant's interests would be adequately protected by a bond in the

amount of $125,000.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, after having conducted a lengthy hearing and after having considering the factors outlined in *Blackwelder*, the Court grants, in part, Plaintiff's Motion for a Preliminary Injunction. Plaintiff is entitled to the following preliminary injunctive relief: (1) Defendant Derek Spotswood is enjoined from engaging in the business of recruiting technical personnel within a fifty mile radius of 8323 N.W. 12th Street, Miami, Florida; (2) Defendant Derek Spotswood is enjoined from having any contact with any of Teksystems' clients listed in the attached exhibit provided to the Court by Mr. Spotswood; and (3) Defendant Derek Spotswood is enjoined from using or causing to be used, or disclosing in any manner, any information of a confidential or proprietary nature relating to the business of Teksystems during or after Spotswood's employment with Teksystems, including without limitation, customer information, customer lists, employee information, employee lists, financial information, pricing information, and Teksystems' methods and procedures including business strategy and business plan information and forms.  This relief shall remain in effect for eighteen months following the Court's June 21, 2005 Order granting the preliminary injunction. The Court is denying Plaintiff's request to provide preliminary injunction relief to enforce the blanket prohibition on Spotswood's solicitation of Teksystems' clients and Plaintiff's request to bar Spotswood from having any contact with some 744 clients with which Spotswood apparently had no contact.

June 28, 2005                                                       /s/_____

                                                                   Richard D. Bennett
                                                                   United States District Judge